## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

William Campbell,

        Plaintiffs,

Case No.  1:22cv315

      v.

Judge Michael R. Barrett

Hamilton County, *et al.,*

        Defendant.

### OPINION & ORDER

This matter is before the Court upon the Motion for Judgment on the Pleadings filed by Defendants Thomas Butler, Hamilton County, Hamilton County Board of Commissioners, William C. Ralston, Brian Shepherd, Robert S. Viner.  (Doc. 19).  Plaintiff William Campbell filed a Response in Opposition (Doc. 23); and Defendants filed a Reply (Doc. 26).  The Court then granted leave for Plaintiffs to file a Surreply.  (Docs. 34, 35).

### I.  BACKGROUND

Plaintiff's claims arise out his wrongful conviction in 2019.  Plaintiff alleges that Defendants fabricated evidence against him and suppressed exculpatory evidence, leading to the initiation of prosecution against him and to his conviction at trial. (Doc. 1, at 2).

The following facts are set forth in the Complaint.  (Doc. 1).  In October 2008, Plaintiff was involved in a single car traffic accident which resulted in the death of Tina Hayes. (Doc. 1, PAGEID 3). Hayes was the driver and Plaintiff was the passenger at the time of the accident. (Doc. 1, PAGEID 4). Defendant Robert Viner, a sheriff's deputy with the Hamilton County Sheriff's Department, witnessed the crash and was first on the

scene. (Doc. 1, PAGEID 4). Defendant Brian Shepherd, another sheriff's deputy with the Hamilton County Sheriff's Department, later arrived on the scene, took photographs, made measurements and interviewed Viner to develop a theory of how the crash occurred and determine who was driving. (Doc. 1, PAGEID 5). Both Defendants Viner and Shepherd falsely reported Plaintiff as being the driver of the vehicle based on falsified facts. (Doc. 1, PAGEID 5). Defendant Hamilton County Coroner, William Ralston, performed the autopsy of Hayes, omitting key injuries showing that Hayes was the driver. (Doc. 1, PAGEID 6).

Shepherd filed an affidavit and criminal complaint against Plaintiff which was based on the evidence fabricated by Viner and Shepherd. (Doc. 1, PAGEID 7).  By filing the affidavit and complaint, Shepherd initiated prosecution against Plaintiff for the death of Hayes. (Id.)  On October 14, 2008, Campbell was indicted with six felonies: three counts of aggravated vehicular homicide, two counts of operating vehicle under the influence of alcohol (OVI), and one count of failure to comply with order or signal of police officer. (Doc. 1, PAGEID 8).

After the first trial of these charges ended in a mistrial, a second trial commenced in October of 2009.  (Doc. 1, PAGEID 9).  At trial, the prosecution used Defendants' false evidence and testimony to support its theory that Campbell was the driver of the vehicle. (Doc. 1, PAGEID 9-14).  Defendants also suppressed evidence which was exculpatory for Campbell, and did not provide this evidence to Campbell's attorney.  (Doc. 1, PAGEID 16).  In November of 2009, a jury found Plaintiff guilty of three counts of aggravated vehicular homicide and two counts of OVI. (Doc. 1, PAGEID 17).  As a result of his conviction, Plaintiff was sentenced to twenty-eight years in prison. (Doc. 1, PAGEID 17).

As part of his post-conviction proceedings, Plaintiff was granted leave to file a motion for new trial. (Doc. 1, PAGEID 19). The motion was granted, and following a bench trial in June of 2020, Plaintiff was found not guilty of all charges. (Doc. 1, PAGEID 24).

In his Complaint, Plaintiff bring eight claims against Defendants: (1) a claim against Defendants Shepherd, Viner, and Ralston under 42 U.S.C. §1983[1] for violations of the Fourth and Fourteenth Amendments based on the fabrication of false evidence; (2) a claim against Defendants Shepherd and Viner under 42 U.S.C. §1983 for a violation of the Fourteenth Amendment based on *Brady*[2] violations; (3) a claim against Defendants Shepherd and Viner under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments based on false arrest; (4) a claim against Defendants Shepherd and Viner under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments based on malicious prosecution; (5) a claim against Defendants Shepherd, Viner, Butler, and John Does 1 through 10 under 42 U.S.C. § 1983 based on failure to intervene; (6) a claim against Defendant Butler and John Does 1 through 10 under 42 U.S.C. §1983 based on supervisory liability; (7) a *Monell*[3] claim under 42 U.S.C. §1983 against Defendant Hamilton County; and (8) a claim against Defendants Shepherd, Viner, Butler, John Does 1 through 10, and Ralston for negligence under Ohio law.

---

[1] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 658, 98 S. Ct. 2018, 2019, 56 L. Ed. 2d 611 (1978).

Defendants Thomas Butler, Hamilton County Board of Commissioners, William C. Ralston, Brian Shepherd and Robert Viner have filed a motion for judgment on the pleadings pursuant to Federal Rule 12(c) and move to dismiss the claims against them.

## II.   <u>ANALYSIS</u>

### A.  <u>Motion for Judgment on the Pleadings</u>

The standard of review for a Rule 12(c) motion is generally the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Accordingly, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, *i.e.*, more than merely possible. *Id.* (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009)). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 556 (2007)).

"If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "when a document

4

is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).

Defendants have attached ninety-four pages of exhibits to its Motion. Plaintiff argues that these exhibits should be disregarded because the motion must be limited to the pleadings.

While these specific documents are not referred to in the Complaint, they are a part of the public state court records related to Plaintiff's claims in this Court. A court may consider public records without converting a Rule 12(c) motion into a Rule 56 motion. *Clark v. Stone*, 998 F.3d 287, 296 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 773, 211 L. Ed. 2d 483 (2022). Therefore, the Court will consider these documents in deciding the Defendants' Motion for Judgment on the Pleadings.

### B. <u>Hamilton County</u>

Defendants argue that because Hamilton County is *sui juris*, or lacks the capacity to be sued, it is unable to be sued as an entity and should be dismissed as a party.

As this Court has recognized: "Generally, Hamilton County is not *sui juris* and therefore cannot be sued." *Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2019 WL 2289277, at *10 (S.D. Ohio May 29, 2019) (citing *Lowe v. Hamilton County Dept. of Job & Family Services*, No. 1:05-cv-117, 2008 WL 816669, at *2 (S.D. Ohio Mar. 26, 2008) (finding that Hamilton County is not *sui juris*)). However, courts have found that a county is amenable to suit for purposes of a *Monell* claim under Section 1983. *Id*.

Here, the sole claim brought against Hamilton County is a *Monell* claim under

Section 1983. Accordingly, there is no basis for dismissing Hamilton County, and Defendants' Motion for Judgment on the Pleadings is DENIED to the extent that it seeks to dismiss Hamilton County as a party.

### C. Hamilton County Board of Commissioners

Defendants argue that Hamilton County Board of Commissioners is not a proper party because they do not have any policy authority concerning the operations of the Hamilton County Sheriff's Office or the Hamilton County Coroner's Office.

As another federal district court in Ohio has explained:

> "Ohio law does not, expressly or impliedly, grant to a county board of commissioners supervisory powers over the activities of the county sheriff's department." *Slough*, 644 F. Supp. 2d at 999. "Therefore, a board of county commissioners has no liability for the actions of [sheriff's department] employees absent a showing that the board assumed supervisory or policymaking control over the sheriff's department in violation of statute." *Id*. (citing *Ridgeway v. Union Cty. Comm'rs*, 775 F. Supp. 1105, 1109-10 (S.D. Ohio 1991)).

*Saalim v. Walmart Inc*., No. 3:21 CV 1481, 2022 WL 426178, at *3 (N.D. Ohio Feb. 11, 2022). Here, Plaintiff has not alleged that the Commissioners assumed any supervisory or policymaking control over the Sheriff's Office. Plaintiff only alleges that the County "is the employer and principal of the individual defendants, and is responsible for the policies, practice and customs" of the Sheriff's Office. (Doc. 1, PAGEID 3). Similarly, Plaintiff alleges that Ralston was a deputy coroner employed by Hamilton County. (Doc. 1, PAGEID 3).

"[W]here the governmental entity itself is also a defendant, a claim against an official or employee of the entity in their official capacity is superfluous or redundant." *Myers v. Montgomery Cnty. Bd. of Commissioners*, No. 3:18-CV-00409, 2019 WL 2567748, at *3 (S.D. Ohio June 21, 2019) (quoting *Day v. DeLong*, 358 F. Supp. 3d 687,

6

700 (S.D. Ohio 2019)); *Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, No. 1:22-CV-319, 2023 WL 4466855, at *3 (S.D. Ohio July 11, 2023) ("Therefore, Plaintiff's § 1983 claim against the Board of Commissioners is essentially a § 1983 claim against Hamilton County."); *Range v. Douglas*, 878 F. Supp. 2d 869, 875-76 (S.D. Ohio 2012), *aff'd in part*, *dismissed in part*, 763 F.3d 573 (6th Cir. 2014) ("Plaintiffs' Section 1983 claim against the Commissioners in their official capacity should be treated as a claim against the County.") (citing *Hainey v. Parrott*, 2005 WL 2397704, *10 (S.D.Ohio Sept. 28, 2005) ("the County Commissioners as representatives of Hamilton County may be held liable in their official capacities for the actions of the coroner.")).

Therefore, to the extent that the claims against the Board of Commissioners is redundant of the claim against the County, Defendants' Motion for Judgment on the Pleadings is GRANTED and the Hamilton County Board of Commissioners are dismissed as parties.

## D.  Statute of limitations

The statute of limitations for a Section 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007). Therefore, Plaintiff's claims are governed by Ohio's personal injury statute of limitations, which is two years. *See* Ohio Rev. Code § 2305.10; *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).[4]

---

[4]The Court notes that another district court has explained:

a motion to dismiss is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).  This is because the statute of limitations is an affirmative defense, for

Although courts look to state law for the length of the limitations period, the time at which a Section 1983 claim accrues "is a question of federal law," "conforming in general to common-law tort principles." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace* v. *Kato*, 549 U. S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)). Accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Defendants maintain that at the latest, Plaintiff was on notice of the injury giving rise to his claims on February 10, 2020 when he filed his motion for a new trial; and because his Complaint was filed on June 2, 2022, his Section 1983 claims are time-barred.

Plaintiff has brought Section 1983 claims based on fabrication of false evidence, *Brady* violations, false arrest, and malicious prosecution.[5] In their Reply, Defendants concede that the Section 1983 fabrication claim is not time-barred. (Doc. 26, PAGEID 280).

When the claim is for false arrest, a Section 1983 cause of action accrues on the date the arrest was made. *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982); *Singleton v. City of*

---

which the defendant bears the burden of proof. *Id*. Accordingly, a motion to dismiss on statute of limitations grounds should only be granted "if the allegations in the complaint affirmatively show that the claim is time-barred." *Id*. (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)).

*Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 678 (M.D. Tenn. 2020), *aff'd*, 2021 WL 8016828 (6th Cir. Oct. 8, 2021). Here, a determination regarding the statute of limitations can be made based on the allegations in the Complaint.

[5]In their Reply, Defendants argue that Plaintiff's state law claims for malicious prosecution and false arrest are time-barred. (Doc. 26, PAGEID 281). Plaintiff responds in his surreply that his state law claim is negligence: willful, wanton, or reckless conduct. (Doc. 28, at 2). This is also what appears in Plaintiff's Complaint. (Doc.1, PAGEID 44). Because Plaintiff is not bringing a state law claim for malicious prosecution and false arrest, and the Court will not address Defendants' argument on this point.

*New York*, 632 F.2d 185, 191 (2d Cir. 1980)).  Plaintiff was first detained on October 4, 2008. (Doc. 1, PAGEID 8). Plaintiff had two years to bring his false arrest claim against Defendants.  Plaintiff's Complaint was filed on June 2, 2022. (Doc. 1). Therefore, Plaintiff is barred from bringing this claim.

A malicious prosecution claim under Section 1983 "does not accrue until the underlying conviction is invalidated." *Fox v. Desoto*, 489 F.3d 227, 235 (6th Cir. 2007) (citing *Heck v. Humphrey*, 512 U.S. 477, 489–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)); *McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019) ("Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, *see* 512 U. S., at 486-487, 114 S. Ct. 2364, 129 L. Ed. 2d 383, will the statute of limitations begin to run.").  Here, Plaintiff's conviction was invalidated on June 4, 2020.  (Doc. 1, PAGEID 24). Therefore, Plaintiff's Section 1983 claim for malicious prosecution is not barred by the statute of limitations.

Similarly, a Section 1983 claim based on a *Brady* violation does not accrue until the relevant criminal proceeding terminates "in favor of the accused."  *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).  Therefore, this claim is not barred by the statute of limitations.

To summarize, Defendants' Motion for Judgment on the Pleadings is GRANTED as to the Section 1983 claim based on false arrest; but DENIED to extent Defendants argue that Plaintiff's other claims are barred by the statute of limitations.

### E.  Absolute immunity

Defendants argue that to the extent that Plaintiff attempts to bring claims against the individual Defendants for their trial testimony, they are entitled to absolute immunity.

9

The Sixth Circuit "has consistently held that nontestimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony." *Gregory v. City of Louisville*, 444 F.3d 725, 739 (6th Cir. 2006). Defendants are correct that they "are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield,* 167 F.3d 994, 1001 (6th Cir. 1999). "However, the Sixth Circuit has also consistently distinguished between the testimony that is offered at trial (and which is shielded by absolute immunity) and investigatory acts committed prior to trial (which are not)." *Friskey v. Bracke*, No. CV 2:17-056-WOB, 2020 WL 465026, at *7 (E.D. Ky. Jan. 28, 2020), *aff'd*, No. 20-5187, 2020 WL 8614220 (6th Cir. Sept. 30, 2020).

Here, during Plaintiff's criminal trial, Defendants attested to Shepard's initial report and written analysis (Doc. 1, PAGEID 5), Viner's written statement to Shepard (Doc. 1, PAGEID 5), and Ralston's autopsy omission (Doc. 1, PAGEID 6).  While the trial testimony is covered by absolute immunity, investigatory acts which were a part of pretrial investigations are not protected by absolute immunity.  "Subsequent testimony can not insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence."  *Gregory v. City of Louisville*, 444 F.3d at 738-39 (citing *Spurlock*, 167 F.3d at 1001). Therefore, Defendants' Motion for Judgment on the Pleadings is DENIED to the extent it seeks absolute immunity for any nontestimonial, pretrial acts.

**F.  Qualified immunity**

Defendants maintain that the individual Defendants are entitled to qualified immunity on all of Plaintiff's Section 1983 claims.

10

As the Sixth Circuit has recently explained: "A defendant is not entitled to qualified immunity at the pleadings stage if (1) 'the facts alleged make out a violation of a constitutional right' and (2) that right 'was clearly established when the event occurred so that a reasonable offic[ial] would have known that his conduct violated it.'" *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 757-58 (6th Cir. 2022) (quoting *Crawford v. Tilley*, 15 F.4th 752, 762-63 (6th Cir. 2021)). "Although 'a plaintiff is generally not required to negate an affirmative defense [like qualified immunity] in a complaint[,] ... the validity of such defenses may be apparent from the face of the complaint, rendering a motion [for judgment on the pleadings] appropriate.'" *Id.*

Defendants maintain that because there was probable cause to arrest and prosecute Plaintiff, it is apparent from the face of Plaintiff's Complaint that Defendants are entitled to qualified immunity. Because the false arrest claim is barred by the statute of limitations, this argument only applies to Plaintiff's malicious prosecution claim.[6]

To establish a Fourth Amendment malicious prosecution claim, a plaintiff must prove that: (1) a criminal prosecution was initiated against the plaintiff and the defendants made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable case for the criminal prosecution; (3) that the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the

---

[6]As one district court has explained: "Section 1983 claims based on theories of false arrest/false imprisonment and malicious prosecution derive from the Fourth Amendment and turn on the question of probable cause." *Salter v. Olsen*, 605 F. Supp. 3d 987, 1002 (E.D. Mich. 2022) (collecting cases). However, it is not clear from Defendants' briefing how a finding of probable cause would impact Plaintiff's claims based on fabrication of false evidence or *Brady* violations. Therefore, the Court will not address the issue of whether the individual Defendants are entitled to qualified immunity from these claims.

plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010) (citations omitted).[7]

An indictment is "not a talisman that always wards off a malicious-prosecution claim." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). As one district court has explained:

> "As a general rule, 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'" *Webb*, 789 F.3d at 660 (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)). There is, however, a "long-held exception to that general rule"—"when the defendant knowingly or recklessly presented false testimony to, or omitted critical information from, the grand jury in order to obtain that indictment," the presumption of probable cause is rebuttable. *Jones v. Clark Cty.*, 690 Fed.Appx. 334, 335 (6th Cir. 2017) (citing *Sykes*, 625 F.3d at 312).

*Hoskins v. Knox Cnty., Kentucky*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *8 (E.D. Ky. Mar. 15, 2018). This exception applies where:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omission do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*King v. Harwood*, 852 F.3d 568, 588 (6th Cir. 2017). Therefore, "pre-indictment nontestimonial acts that were material to the prosecution of a plaintiff [can] rebut the presumption of probable cause established by a grand-jury indictment." *Mills*, 869 F.3d at 480 (citing *King v. Harwood*, 852 F.3d at 587-80). Here, Plaintiff alleges that Viner and

---

[7]Defendants only challenge the probable cause element in their Motion.

Shepherd made false statements in their investigative reports (Doc. 1, PAGEID 5); and Ralston fabricated evidence in the autopsy report (Doc. 1, PAGEID 6).

Therefore, Defendants' Motion for Judgment on the Pleadings is DENIED to the extent it seeks qualified immunity on behalf of the individual Defendants at this stage of the litigation.

### G. *Brady* violation

Defendants argue that Plaintiff has failed to plead facts that would give rise to a claim under *Brady*. Defendants explain that *Brady* only requires officers to turn over potentially exculpatory evidence to the prosecutor.

"As far as the Constitution is concerned, a criminal defendant is equally deprived of his or her due process rights when the police rather than the prosecutor suppresses exculpatory evidence because, in either case, the impact on the fundamental fairness of the defendant's trial is the same." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009). "Where the police are concerned, the "exculpatory value" of the evidence must be "apparent." *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "This additional burden, however, merely reflects that materiality is a legal question that the police are not trained to make, and thereby accounts for the practical concern that the police cannot be held accountable for failing to divine the materiality of every possible scrap of evidence." *Moldowan*, 578 F.3d at 388.

Here, Plaintiff alleges that autopsy photos and photographs taken at the scene and the hospital clearly show who the driver of the car was. (Doc. 1, PAGEID 6). Furthermore, on the night of the accident, Plaintiff told Defendants that he was not the driver of the car. (Doc. 1, PAGEID 4). Based on these allegations, the Court concludes that Plaintiff has

alleged a plausible claim for a *Brady* violation.[8]   Therefore, Defendants' Motion for Judgment on the Pleadings is DENIED to the extent it seeks to dismiss Plaintiff's Section 1983 claim for a *Brady* violation.

### H.  Official capacity claim against Sheriff

Defendants argue that because Plaintiff sued Butler and Viner in their official capacities, Plaintiff is in effect suing Hamilton County Sherriff Charmaine McGuffey in her official capacity.  Defendants point out that in order to sue a government entity, a plaintiff must show a policy or custom that created the constitutional violation.

Defendants' reference to McGuffey is puzzling.   Nowhere in the Complaint is McGuffey named or is there a reference to the Sheriff being sued in her official capacity. Instead, Butler and Viner are named in their official capacities as "duly-appointed sheriff's deputies employed by the Hamilton County Sheriff's Department, acting within the scope of their employment for the Defendant County and the HSCO and under the color of state law."  (Doc. 1, PAGEID 3).  Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citation omitted).  Therefore, by naming Butler and Viner in their official capacity, Plaintiff has plead a claim against Hamilton County.  As discussed above, even though Hamilton County is not *sui juris*, a county is amenable to suit for purposes of a *Monell* claim.

---

[8]Defendants have not challenged the other elements of a *Brady* claim under Section 1983, which are: "a defendant withheld favorable exculpatory or impeachment evidence; the state suppressed that evidence; and the suppression resulted in prejudice, meaning that the suppressed evidence was material."  *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (citing *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010).

To the extent Defendants maintain that this *Monell* claim under Section 1983 should be dismissed: "A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). Instead, "a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (citations and internal quotation marks omitted).

There are four methods of proving a municipality's illegal policies or customs: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). Plaintiff insists he has properly plead all four methods.

As to the first method of liability, Plaintiff maintains that Hamilton County had a policy of using "unconstitutional measures to falsely implicate criminal suspects, including by fabricating evidence and/or withholding and/or suppressing exculpatory evidence." (Doc. 1, PAGEID 28). These allegations fall short of what is necessary to support a *Monell* claim based on an illegal policy. As one district court has explained:

> A plaintiff's "conclusory allegations that the defendants had an unlawful policy, unaccompanied by supporting factual allegations, 'are not entitled to the assumption of truth,' and do not state a plausible claim for relief." *Taylor v. Brandon*, No. 3:14-cv-588, 2016 WL 258644, at *3 (W.D. Ky. Jan. 20, 2016) (dismissing official-policy claims) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937); *see also Klotz v. Shular*, No. 3:14-cv-723, 2015 WL 4556267,

at *7 (W.D. Ky. July 28, 2015) (dismissing *Monell* claims that failed to plead facts supporting illegal-policy claim); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing claim that allege specific unconstitutional policy or practice "without additional factual assertions of any kind").

*Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 502 (W.D. Ky. 2021). Without additional factual allegations about this policy of using unconstitutional measures, Plaintiff fails to state a *Monell* claim based on an illegal official policy.

The second method of establishing municipal liability—ratification—does not require proof of a pattern or custom. *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 537-38 (W.D. Ky. 2020) (citing *Wilson v. Louisville-Jefferson Cty. Metro Gov't & Brett Hankison*, No. 3:19-CV-00739-CRS, 2020 WL 981717, at *2, 2020 U.S. Dist. LEXIS 34437, at *4–6 (W.D. Ky. Feb. 26, 2020)). "Instead, ratification of a single violative act is enough for municipal liability to attach." *Id*. (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "The Sixth Circuit recognizes two methods for finding ratification: (1) when an individual with policymaking authority issues a final decision affirming a subordinate's decision on the merits or otherwise, and thereby adopting it as municipal policy, and (2) when a policymaker fails to meaningfully investigate the acts of a subordinate." *Meyers v. Cincinnati Bd. of Educ*., 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018) (citing *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118–19 (6th Cir. 1994) and *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246-48 (6th Cir. 1989)), *aff'd*, 983 F.3d 873 (6th Cir. 2020).

Plaintiff's claim falls short because he has not identified an official with final decision-making authority in his Complaint. Moreover, the Court notes that "[w]hen municipal officials have been deemed to be making policy decisions in the past, it has not

16

been because they were vested with the authority to make factual assessments of a particular situation, but rather, because they were vested with the authority to respond to that situation." *Jorg v. City of Cincinnati*, 145 F. App'x 143, 146 (6th Cir. 2005) (concluding that coroner was not policymaker for county when making factual determination as to a person's cause of death). Therefore, Plaintiff has failed to state a *Monell* claim based on a ratification theory.

As to the third method—a policy of inadequate training or supervision—Plaintiff claims that Hamilton County had "inadequate policies, training or supervision on the following: fabrication of evidence or police reports; Hamilton County deputies' obligation to disclose exculpatory and impeachment evidence; the handling, preserving, and disclosure of exculpatory or impeachment evidence; conducting investigations and witness interviews; and writing of police reports or notes; even though the need for such policies, training, and supervision was obvious." (Doc. 1, PAGEID 29).

"In order to show that a municipality is liable for a failure to train its employees, a plaintiff 'must establish that: (1) the City's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the City's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)); *see also Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012) ("Liability for unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train.").

As to the second element of the failure-to-train theory, an allegation of deliberate indifference must include either "prior instances of unconstitutional conduct

17

demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it," or else "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 500 (W.D. Ky. 2021) (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012)). Here, Plaintiff alleges the problem with unconstitutional conduct was "widespread" but does not reference any prior instances. Therefore, Plaintiff must rely on a single violation.

To state a failure-to-train claim based on a theory of "single incident" liability, a plaintiff must "allege 'a complete failure to train the [officers], training that is so reckless or grossly negligent that future ... misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 500 (W.D. Ky. 2021) (quoting *Karsner v. Hardin Cnty.*, No. 3:20-CV-125-RGJ, 2021 WL 886233, at *15 (W.D. Ky. Mar. 9, 2021)). Here, Plaintiff alleges: "The constitutional violations complained of by Plaintiff were a highly predictable consequence of a failure to equip Hamilton County sheriff's deputies with the specific tools—including polices, training, and supervision—to handle the recurring situations of how to handle, preserve, and disclose exculpatory or impeachment evidence, how to conduct investigations and witness interviews, and how to write police reports or notes." (Doc. 1, PAGEID 29).

At this stage of the proceedings, the Court must accept these allegations as true. "Widespread officer ignorance on the proper handling of exculpatory materials would have the 'highly predictable consequence' of due process violations." *Gregory v. City of*

18

*Louisville*, 444 F.3d 725, 753 (6th Cir. 2006); *see also Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *15 (E.D. Ky. Jan. 9, 2018) ("Given the known frequency with which police" obtain exculpatory evidence and their obligation to collect reliable evidence, the City of Newport's alleged failure to train constitutes deliberate indifference to the "highly predictable consequence" of the violations of criminal defendants' constitutional rights), *aff'd*, 745 F. App'x 618 (6th Cir. 2018). Therefore, Plaintiff has stated a *Monell* claim based on a failure to train theory under the single-incident liability approach.

Finally, Plaintiff alleges the existence of a custom of tolerance or acquiescence of federal rights violations. Plaintiff alleges that Hamilton County had widespread practices of using unconstitutional measures to falsely implicate criminal suspects, including by fabricating evidence and suppressing exculpatory evidence. (Doc. 1, PAGEID 28-29). Plaintiff alleges that Hamilton County was "on notice of a widespread problem with misconduct prior to and after the events described herein. This widespread practice was so well settled as to constitute a *de facto* policy in the Hamilton County Sheriff's Department, and the practice was allowed to exist because municipal policymakers with authority over the practice exhibited deliberate indifference to the problem, effectively ratifying it." (Doc. 1, PAGEID 29).

Under a custom-of-tolerance theory, a plaintiff must demonstrate: (1) a "clear and persistent pattern" of violation of federal rights; (2) "notice or constructive notice" to defendants; (3) defendants' "tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction;" and (4) that this custom was "the 'moving force,' or direct causal link for the

constitutional deprivation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).  Accepting the allegations in the Complaint as true, Plaintiff has stated a *Monell* claim based on the existence of a custom of tolerance or acquiescence of federal rights violations.

To summarize, Defendants' Motion for Judgment on the Pleadings is DENIED to the extent it seeks to dismiss Plaintiff's *Monell* claim based on a failure to train and custom-of-tolerance theory; but GRANTED to the extent that it seeks to dismiss Plaintiff's *Monell* claims based on other theories.

## I.  Collateral Estoppel

Defendants argue that because Plaintiff had the opportunity to litigate his claims against the individual Defendants when he filed a lawsuit in the Hamilton County Court of Common Pleas seeking a declaration he had been wrongfully convicted, he is barred from bringing these claims now.

Defendants are referencing Plaintiff's claim under Ohio's reparations statute which allows plaintiffs to sue the State of Ohio for damages from wrongful imprisonment.  (See Docs. 19-6, 19-7).  The statute provides in relevant part:

> A person may file a civil action to be declared a wrongfully imprisoned individual in the court of common pleas in the county where the underlying criminal action was initiated. That civil action shall be separate from the underlying finding of guilt.  Upon the filing of a civil action to be determined a wrongfully imprisoned individual, the attorney general shall be served with a copy of the complaint and shall be heard.

Ohio Rev. Code § 2743.48(B)(1).  The statute provides a two-step process to compensate a wrongfully imprisoned individual: "The first step is an action in the common pleas court seeking a preliminary factual determination of a wrongful imprisonment; the second step is an action in the Court of Claims to recover money damages." *Gillispie v. City of Miami*

*Twp*., No. 3:13-CV-416, 2022 WL 4922659, at *3 (S.D. Ohio Oct. 4, 2022) (quoting *Doss v. State*, 135 Ohio St. 3d 211, 985 N.E.2d 1229, 1232 (Ohio 2012)).  As the Ohio Supreme Court has recently explained: "the wrongful-imprisonment statute requires that plaintiffs bring wrongful-imprisonment claims against the state for damages, not state officials." *McClain v. State*, 2022 WL 17981393, *4 (Ohio Dec. 29, 2022) (citing Ohio Rev. Code § 2743.48(B)(2)); *see also Derrico v. Moore*, No. 1:17CV866, 2018 WL 3586981, at *7 (N.D. Ohio July 26, 2018) ("By its very terms, [Ohio Rev. Code § 2743.48] applies only to civil actions filed by a wrongfully imprisoned individual against the State of Ohio.").

"Federal courts must apply state collateral estoppel law when determining whether a state court's judicial determination has preclusive effect in a § 1983 action." *Jordan v. Blount Cnty*., 458 F. Supp. 3d 870, 885 (E.D. Tenn. 2020) (citing *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983)).  Under Ohio law, collateral estoppel falls within the doctrine of *res judicata*, which "consists of 'the two related concepts of claim preclusion, also known as *res judicata* or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'"  *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (quoting *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist*., 422 Fed.Appx. 497, 500 (6th Cir. 2011)).  While Defendants reference "collateral estoppel" in their Motion for Judgment on the Pleadings, it is clear from their arguments that they are instead relying on the concept of claim preclusion.

In Ohio, claim preclusion has four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or

occurrence that was the subject matter of the previous action." *Id*. at 520 (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.1997).

Plaintiff's first action seeking to be declared a wrongfully imprisoned individual pursuant to Ohio Revised Code § 2743.48 was necessarily filed against the State of Ohio. Ohio is not a party to the litigation in this case; and Defendants were not parties to the wrongful-imprisonment litigation in state court. Moreover, the Ohio Court of Claims lacks subject-matter jurisdiction over alleged violations of constitutional rights and claims arising under Section 1983. *Bleicher v. Univ. of Cincinnati College of Medicine*, 78 Ohio App.3d 302, 604 N.E.2d 783, 786 (Ohio 1992).

Therefore, Defendants' Motion for Judgment on the Pleadings is DENIED to the extent it seeks to dismiss Plaintiff's claims based on "collateral estoppel."

## III.  <u>CONCLUSION</u>

Based on the foregoing, the Motion for Judgment on the Pleadings filed by Defendants Thomas Butler, Hamilton County, Hamilton County Board of Commissioners, William C. Ralston, Brian Shepherd, Robert S. Viner (Doc. 19) is **DENIED in PART** and **GRANTED in PART:**

1. The Motion is DENIED to the extent that it seeks to dismiss Hamilton County as a party;

2. The Motion is GRANTED to the extent that it seeks to dismiss the Hamilton County Board of Commissioners as parties;

3. The Motion is GRANTED as to the Section 1983 claim based on false arrest; but DENIED to extent Defendants argue that Plaintiff's other claims are barred by the statute of limitations;

4. The Motion is DENIED to the extent it seeks to dismiss Plaintiff's *Monell* claim based on a failure to train and custom-of-tolerance theories; but GRANTED to the extent that it seeks to dismiss Plaintiff's *Monell* claims based on other theories.

5. The Motion is DENIED to the extent it seeks to dismiss Plaintiff's claims based on

"collateral estoppel."

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
JUDGE MICHAEL R. BARRETT